Tilghman C. J.
The grand inquest for the city and COUnty of Philadelphia, having preferred a bill of indictment for a rape, against Nicholas Kosloff, Consul General of his Imperial Majesty the Emperpr of Russia, a motion has been made to quash the indictment for want of jurisdiction in this Court. Two causes are assigned for our want of jurisdic-a tion. 1. That the privilege of immunity from criminal prosecutions, is conferred on Consuls by the Law of Nations. 2. That by the Constitution and Laws of the United States, exclusive jurisdiction in all cases affecting Consuls, is vested in the Courts of the United States.
1. It is granted, that by the modern law of nations, Ambassadors, and other public ministers, are, in general, exempt from criminal prosecutions. Perhaps there are some offences, such as an attempt on the life of the Sovereign with whom they reside, which would warrant their punishment. But in every thing short of an extreme case, it is more conducive to the peace, and more agreeable to the usage of nations, to send them to their own Sovereign, to receive from him the punishment they deserve. It has not been contended, that a Consul is a public minister — but it is said, that a Consul General, such as Mr. Kosloff, is prohibited from exercising trade and .commerce, and entrusted with important concerns from his Sovereign, and so nearly resembles a public minister, that he is entitled to some of his prerogatives, and in particular, to exemption from criminal prosecution. In *546 considering this case, we must exclude from, our view, the august personage to whom allusion was made in the argument. Concerning his high character, and the intimacy of the relations to be preserved with him, there is but one voice, —one wish. These considerations would have their deserved weight, in the proper place. But before us there is only a naked question of right, in which all nations are equally concerned; for we cannot but see, that that which is granted as the right of one, must be conceded as the right of all. The law of nations is sought for in the usages of nations ; in the opinions of approved authors; in treaties; and in the decisions of Judges. With regard to the privileges of Consuls, there is some difference of opinion, among respectable authors. Wicquefort, Bynkershoek, and Martens, allow to a Consul no privilege, against suits civil or criminal: and the reason they assign, is, that Consuls in no manner represent the person of their Sovereign, but are sent for the purpose of assisting his subjects, particularly in matters of commerce, and sometimes of deciding disputes which may arise between them, by permission of the Government in whose dominions they reside. (See Wicquef. IdAmbassadeur, Book I. pa. 65. Bynk, deforo legatorum. chap. 10. pa. 113. Barbeyrac’s translation into French. Martens’ Summary of the Law of Nations, book iv. chap. 3. sect. 8.) Opposed to them, is Vattel, who, although he does not assert, that a Consul is entitled to the privileges of a public minister in general, is yet of opinion, that from the nature of his functions, “ he should be independent of the ordinary criminal j ustice of the place where he resides, so as not to be molested or imprisoned, unless he himself violates the law of nations by some uncommon crime. Vatt. book ii. chap. 2. sect.-34. I am not quite sure what is meant, by violating the law of nations, in this passage. Crimes against the law of nations, are sometimes understood to be, crimes which all nations agree to punish. Such are murder, and rape, among the civilised nations: and if that be the meaning of Vattel, his authority would not exempt the Consul from the present prosecution. But what is of more weight than the judgment of authors however respectable, is the opinion and the practice of our own Government, and that of the foreign nations with whom we have had intercourse. We have had treaties with France, Spain, Great Britain, Holland, Prussia, and *547 Sweden, in all of which the subject of Consuls has been introduced, and in not one of which, have Consuls been protected from suits civil or criminal. I say nothing of our treaties with the Barbary powers, because there are special reasons why all nations who send Consuls to them, take care to provide expressly for their personal security. In the treaty with Great Britain, made in 1794, Consuls are expressly declared, to be subject to punishment by the law of the country in which they reside. By the consular convention with France, in 1788, there is to be full and perfect immunity, concerning the Chancery and its papers, but the house of the Consul is to be no asylum for persons or effects. And in our other treaties, the most that is stipulated in favour of Consuls is, that they shall respectively enjoy the same prerogatives and favours, that are granted to those of the most favoured nations. These treaties afford a strong proof of the usage of nations — for it cannot be supposed, that they should have omitted to secure Consuls from criminal prosecutions, if it had been thought desirable, or usual, to afford them that protection.* But there is not wanting more direct proof of the opinion of our own Government. In the “ act for the punishment of certain crimes against the United States’’ passed April, 30, 1790, penalties are inflicted on persons who sue out process from any Court, against an Ambassador or other public minister — but the act is silent as to Consuls. And what is directly to the point, the 9th sect, of the “ act to establish the Judicial Courts of the United States’’ (passed September, 24, 1789,) vests the District Courts with jurisdiction of offences committed by Consuls, in which the punishment does not exceed a fine of 100 dollars, &c. &c. Neither are we left, on this important subject, without the light of judicial decision. Mr. Ravara, Consul from Genoa, was indicted and convicted for a misdemeanour, in the Circuit Court of the United States. 2 Dali. 299. He was defended by able counsel, who contended for his privilege, on the authority of Vattel. But the Court decided against him, and it is worthy of remark, that Ch. J. Jay presided, who had been long employed in a diplomatic function of a high grade at the court of Madrid, and was one of the ministers of the United States who negotiated the treaty which established our Independence, at Paris. No person, certainly, had better opportunities of knowing the usage of nations, or a bet *548 ter capacity for improving these opportunities. From all these considerations, I cannot hesitate in the opinion, that there is nothing in the law of nations, which protects the Qonsuj General of Russia from this indictment.
2. A more difficult question remains to be considered — Is. the jurisdiction of this Court taken away, by the Constitution and Laws of the United States ? Before I go into an examination of the Constitution and laws, it may not be improper to say a word or two, respecting the subject in which this question arises. An agent of a foreign Government, accused of a crime committed in the State of Pennsylvania, claims, not an exemption from trial, but the right of being tried by a Court of the United States. His public relations are, not with the State of Pennsylvania, but with the Government of the United States: and if the Emperor of Russia should suppose that he had cause to complain of our treatment of his officer, he must address himself, not to the Governor of Pennsylvania, but to the President of the United States. But even where there was a cause of complaint, cases may be easily supposed, in which the President might think it more more conducive to the peace of the nation, to send a foreign agent out of the country, to be punished by his own Sovereign, than to inflict punishment on him, by our own laws, here. These considerations are so manifest, that when the people of the United States were about to form a federal Government, through which alone they were to maintain an intercourse with foreign nations, it would have seemed a want of common prudence, not to commit to that Government the management of all affairs respecting the public agents of those nations. Let us now advert to the instrument of our Federal Union, and we shall soon perceive, that the statesmen who framed it, were perfectly aware of the importance of placing all foreign public agents, Consuls included, under the complete superintendance of the Federal Government. It was through the judicial power, that those persons could principally be affected. Accordingly we find it provided, by the 2d sect, of the 3d article of the Constitution, that the judicial power shall extend “ to all cases affecting Ambassadors, other public ministers, and Consuls,” Words more comprehensive cannot be devised. They include suits of every kind, civil and criminal. This is not denied by the Attorney General of Pennsylvania, nor, as I *549 understand, is it denied, that by virtue of this provision, Congress had a right to declare by law, that in no case, civil or criminal, should a State Court have jurisdiction over a Consul. But it is contended, that until Congress does by law declare so, the State Courts have concurrent jurisdiction with the Courts of the United States; or rather, that in the case before us, the State Courts alone have jurisdiction, because, Congress having passed no. law defining the crime, or the punishment of rape, the Courts of the United States cannot take cognisance of the offence. The Constitution in the 1st section of the 3d article, declares in what Courts the judicial power shall be vested, viz. in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.” — In the 2d section, it enumerates the different cases to which the judicial power shall extend, and then goes on to direct the distribution of that power among the different Courts.' — “ In all cases affecting Ambassadors, other public ministers, and Consuls, and those ■ in which a State shall be a party, the Supreme Court shall have original j urisdiction: in all the other cases before mentioned, the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such restrictions, as the Congress shall make.” Thus the judicial power, extending to all cases affecting Consuls, and that portion of it which respects Consuls, being vested in the Supreme Court, it follows, that as soon as the Supreme Court was organised by law, it became immediately vested with original jurisdiction in every case by which a Consul might be affected. But was this an exclusive jurisdiction? The opinion of the Supreme Court, Marbuy v. Madison, 1 Cranch, 13/, goes far towards establishing the principle of exclusive jurisdiction. The point decided in that case, was, that where the Constitution had vested the Supreme Court with appellate jurisdiction, it was not in the power of Congress to give it original jurisdiction; and the whole scope of the argument maintained in the Court’s opinion, goes to prove, that where the Constitution had given original jurisdiction, it was not in the power of Congress to give appellate jurisdiction. This will appear from the following extract from that opinion. “ If congress remains at liberty to give this Court appellate jurisdiction, where the Constitution has declared their jurisdiction shall be original, the distri *550 bution of jurisdiction made in the Constitution, is form without substance. Affirmative words are often, in their operation, negative of other objects than those affirmed, and in this case, a negative, or exclusive sense must be given to them, or they have no operation at all.” “ If the solicitude of the Convention, with respect to our peace with foreign powers, induced a provision that the Supreme Court should take original jurisdiction in cases which might be supposed to affect them; yet the clause would have proceeded no further than to provide for such cases, if no further restriction on the power of Congress had been intended. That they should have appellate jurisdiction in all other cases, with such exceptions as Congress might make, is no restriction, unless the words be deemed exclusive of original jurisdiction.” Now taking this to be the construction of the Constitution, all these parts of the “ act to establish the Judicial Courts of the United States,” which vest jurisdiction in cases affecting Consuls, in the District or Circuit Courts, would be unconstitutional and void. And, if it was intended by the Constitution, that no inferior Court of the United States should have jurisdiction, it cannot be supposed that a State Court was to have it, because there is much stronger reason for denying it to the State Courts, than to. the inferior Courts of the United States. It will be perceived, that this principle shakes the decision in the case of Ravara, who was convicted in the Circuit Court, though not that part of the decision which respects the privilege of a Consul. But if the two cases cannot be reconciled, the Circuit Court must give way. Supposing, however, for argument’s sake, that the Constitution does not vest the Supreme Court with exclusive jurisdiction; let us see whether Congress has not excluded the State Courts by the judiciary act, passed 24th September, 1789. By the 9th section, the District Courts are vested exclusively of the Courts of the several States, with cognisance of “ all crimes and offences that shall be cognisable under the authority of the United States, committed within their respective districts, where no other punishment than whipping, not exceeding thirty stripes, a fine not exceeding 100 dollars, or a term of imprisonment not exceeding six months, is to be inflicted.” Consuls are embraced in this jurisdiction, as plain, ly appears by considering the whole section, and as was declared by this Court, in Manhardt v. Soderstrom, (1 Binn. *551 138.) Then comes the 11th section; by which the Circuit Courts are vested with exclusive cognisance of “ all crimes and. offences cognisable under the authority of the United States, except where the said act otherwise provides, or the laws of the United States shall otherwise direct, and concurrent jurisdiction with the District Courts, of the crimes and offences cognisable therein.” Does not this exclude the State Courts from jurisdiction in the case of Consuls ?. The only argument attempted, or that can be devised, in support of the negative, is, that no offence is cognisable in any Court of the United States, until Congress has declared it to be an of-fence, and prescribed the punishment. This is the only consideration which ever had the least weight in my mind. But upon mature reflection, I am unable to deny, that the Courts of the United States can take cognisance, when I find it written in the Constitution, that the Supreme Court shall have jurisdiction in all cases affecting a Consul. Is he not affected in criminal cases, much more than in civil ? How then can I say, that the Supreme Court has no jurisdiction? But how, or by what law is he to be punished, in case of conviction ? Shall he be punished by the law of Pennsylvania, where the offence was committed, inasmuch as there is no other express law which reaches his case ? And it is on account of the person only that jurisdiction is given to the Courts of the United States. Does the 34th section of the judiciary act apply to the punishment of offences, by which it is enacted, “ that the laws of the several States, except where the Constitution, treaties, or. statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the Courts of the United States, in cases where they apply ?” May a person convicted in a Court of the United States, of a crime of the' highest grade, concerning which Congress has made no provision, be punished, according to the opinion of Judge Story, in The United States v. Coolidge, 1 Gallison’s Rep. 488, by fine and imprisonment, on the principles of the common law. Or is the Constitution to be so construed, as to exclude the jurisdiction of all inferior Courts, and yet suffer the authority of the Supreme Court to lie dormant, until called into action by a law which shall form a criminal code on the subject of Consuls ? These are questions which may embarrass those who have to answer them, but are not neces *552 sary to be answered here. No embarrassment, however, could equal that into which this Court would be thrown, should it determine, that no Court of the United States has jurjsdiction, in' a case which affects a Consul in every thing short of life, when the Constitution declares, that the Supreme Court shall have jurisdiction in all cases affecting him. Upon full consideration, I am of opinion that the indictment should be quashed, because this Court has no jurisdiction.